SHORT RECORD
NO. 22-1166
FILED 02/02/2022

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICAH UETRICHT and JOHN KADERBEK, ) ) Plaintiffs, ) ) ) v. ) ) CHICAGO PARKING METERS, LLC, ) ) Defendant. ) | Case No. 1:21-cv-03364 Hon. Matthew F. Kennelly Mag. Judge Gabriel A. Fuentes |

# NOTICE OF APPEAL

Notice is hereby given that the plaintiffs in the above-named case hereby appeal to the United States Court of Appeals for the Seventh Circuit from the final judgment entered in this action on January 24, 2022.

Respectfully submitted,

Dated: February 1, 2022        By: /s/ *Thomas H. Geoghegan*
                                    One of Plaintiffs' Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Willem Bloom
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511

Stuart J. Chanen
Ariel Olstein
Chanen & Olstein
7373 Lincoln Avenue, Suite 100
Lincolnwood, IL 60712
(847) 469-4669

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on February 1, 2022, using the CM/ECF filing system, which I understand will send a notice of electronic filing to all parties of record through the Court's system.

Respectfully submitted,

*/s/ Thomas H. Geoghegan*
One of Plaintiff's Attorneys

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICAH UETRICHT and<br>JOHN KADERBEK,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CHICAGO PARKING METERS, LLC,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Case No. 21 C 3364<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

　　This case concerns a 2008 agreement between the City of Chicago and Chicago Parking Meters, LLC (CPM) that grants CPM the exclusive right to operate and collect revenue from the City's metered parking spaces for a 75-year period (the Agreement). Micah Uetricht and John Kaderbek[1] have sued CPM, asserting claims under the Sherman Act and the Illinois Consumer Fraud Act (ICFA). They seek certification of a class action under Federal Rule of Civil Procedure 23(b)(2) and an injunction against CPM's enforcement of the Agreement until certain modifications to it are made. CPM has moved to dismiss, contending, among other things, that the plaintiffs lack standing, they fail to plead an antitrust injury, and their Sherman Act claims are barred by the state action immunity doctrine. For the following reasons, the Court dismisses the case based on state action immunity.

---

[1] The case was originally filed with three named plaintiffs, but the third plaintiff was dropped in the plaintiffs' first amended complaint after she moved away from Chicago.

**Background**

For the purposes of this motion, the Court takes all well-pleaded factual allegations in the plaintiffs' first amended complaint as true. The plaintiffs are car owners living in Chicago. They seek to represent a class of "all Chicago residents who are using the Metered Parking System." First Am. Compl. ¶ 52.

In 2008, CPM and the City entered into the Agreement under which CPM agreed to pay the City about $1.1 billion in exchange for the exclusive right to operate and collect revenue from the City's network of metered parking spaces (the Metered Parking System). The Metered Parking System comprises approximately 36,000 city-operated, metered parking spaces in business and commercial areas. The term of the Agreement is 75 years, during which it cannot be rebid or modified unless the City pays CPM the full value of the Agreement.

Under the Agreement, the City retains so-called "reserved powers" over the Metered Parking System. But it is prohibited from exercising these powers without compensating CPM for any financial losses that CPM may suffer as a result of the regulation. For example, the City may not "reduce rates, use peak pricing, remove meters to reduce congestion, put in 'drop off' zones, and eliminate safety hazards in high crash areas, without a determination and possible arbitration of the compensation due to CPM." *Id.* ¶ 27. According to the plaintiffs, the costs of reimbursing CPM for significant changes to the Metered Parking System are so high that City officials are reluctant to undertake these kinds of projects. They contend that CPM, because of its financial leverage over the City, possesses "*de facto* exclusive control over the Metered Parking System." *Id.*

The plaintiffs allege that they suffer three distinct injuries as a result of the Agreement. First, the plaintiffs allege that they are injured by higher metered parking fees. They contend that the fees for city-owned metered parking have doubled since the Agreement was executed and are now higher than the fees in every other major city in the United States other than New York. Second, the plaintiffs contend that the Agreement "deprives [them] of the benefits from active regulation of the public streets." *Id.* ¶ 4. Third, the plaintiffs allege that, by forcing the City to maintain the number of metered parking spaces, CPM has stunted the development of alternative transportation routes, like bicycle lanes and express bus lanes, promoting auto-dependency and increasing transportation costs.

As indicated, the plaintiffs request injunctive and declaratory relief. They ask the Court to declare that CPM and the Agreement violate sections 1 and 2 of the Sherman Act and the ICFA. They also ask the Court to "[e]njoin CPM from enforcing the Agreement unless and until CPM has modified that Agreement to permit active regulation by the City of the Metered Parking System and a reasonable termination date for such Agreement, as modified." *Id.* ¶ 66.

## Discussion

The plaintiffs assert three claims. Count 1 is a claim for illegal monopolization in violation of section 2 of the Sherman Act. Count 2 is a claim for illegal restraint of trade in violation of section 1 of the Sherman Act. And Count 3 is an unfair practices claim under the ICFA. For reasons that will become apparent, the Court first addresses the arguments concerning the Sherman Act claims.

3

1.  **Standing**

Article III of the Constitution restricts the jurisdiction of federal courts to "Cases" and "Controversies." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019). "For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue." *Id.* On a motion to dismiss, it is the plaintiff's burden to "clearly allege facts demonstrating each element" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted). He must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

As explained above, the plaintiffs allege three separate injuries that they contend establish their standing. The Court begins its analysis with the first alleged injury, increased metered parking fees. This is a financial injury of the type that easily meets the injury-in-fact requirement. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). The more difficult question is whether the plaintiffs have met the other two elements of standing: causation and redressability. Under the Agreement, CPM does not have direct control over the metered parking rates; rather, it is the City that has "the Reserved Power to establish and revise from time to time the Metered Parking Fees." Dkt. no. 22-1 at 58. Although the plaintiffs allege that CPM has *de facto* control over the metered parking rates, it is undisputed that CPM cannot directly change the rates. The plaintiffs' injuries are thus tied to CPM through the actions and decisions of the City, a separate actor that is not a party to this case.

4

Standing is "substantially more difficult" to establish "where a causal relation between injury and challenged action depends upon the decision of an independent third party." *California v. Texas*, 141 S. Ct. 2104, 2217 (2021) (quotation omitted). But it's not impossible. In such cases, the plaintiff can still establish standing by showing "that [the] third parties will likely react in predictable ways." *Id.*

In *Department of Commerce*, for example, the Supreme Court held that states had standing to challenge the inclusion of a citizenship question in the 2020 census because it was sufficiently likely that the inclusion of such a question would result in underreporting by noncitizen households, thereby decreasing the amount of federal funds distributed to the states. *Dep't of Commerce*, 139 S. Ct. at 2565. The Court rejected the government's argument that the states' alleged harm depended on the independent action of third parties choosing—against the law—to not respond to the census. *Id.* at 2566. The Court concluded: "Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Id.*

In contrast, the Supreme Court found in *California v. Texas* that the state plaintiffs did not have standing to challenge the Affordable Care Act's individual mandate. *California v. Texas*, 141 S. Ct. at 2117. The states argued that the individual mandate would harm them by encouraging more individuals to enroll in state-operated programs, increasing the cost of these programs. *Id.* The Supreme Court found that the plaintiffs failed to show that individuals would likely sign up for state-operated programs due to the individual mandate, given that the mandate was unenforceable. *Id.* at 2118. It concluded that "neither logic nor intuition" supported the plaintiffs' causal

5

reasoning. *Id.*

In this case, the plaintiffs plausibly allege that the "predictable effect" of the requested injunction would be that the City would decrease metered parking fees. The plaintiffs cite relevant data from other major metropolitan areas, stating that, with the exception of New York residents, Chicagoans "pay the highest average rates for short term on-meter use for any U.S. city over 100,000." First Am. Compl. ¶ 41. Additionally, the plaintiffs allege that the Agreement prevents the introduction of cost-saving measures like off-peak pricing that are being implemented in other cities. Although the City currently has nominal control over the metered parking rates, the plaintiffs contend, it is functionally precluded from exercising that control given the economic penalties that it would have to pay CPM to implement pricing changes of this sort. The injunction the plaintiffs request would allow the City to more easily regulate the Metered Parking System and bring down metered parking rates to levels more in line with those of other major cities.

CPM contends that the plaintiffs cannot allege an injury from increased parking fees because they "must plead injury in relation to the relief they seek, and the relief sought has nothing to do with whether meter rates have gone up." Def.'s Mem. at 1. Not so. As the Court has explained, the plaintiffs allege that the metered parking fees have increased because of the City's inability to effectively regulate the Metered Parking System. The requested injunction would address this by prohibiting CPM from enforcing the Agreement until it has modified the Agreement to permit active regulation by the City.

For these reasons, the Court finds that the plaintiffs' alleged injuries from

increased metered parking fees are sufficient to confer standing. The Court thus need not address whether they have standing based on the other two injuries they allege.

**2.    Antitrust injury**

The defendants next argue that the plaintiffs have failed to allege an antitrust injury. To maintain a claim under the Sherman Act, the plaintiff must allege either (1) reduced output of goods or services or (2) higher prices for consumers. *Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992). The plaintiffs' allegations regarding increased metered parking fees satisfy this requirement. The Court rejects CPM's contention that only the City, and not CPM, controls meter pricing. As previously discussed, the plaintiffs plausibly allege that CPM has *de facto* control over meter pricing under the terms of the Agreement.

The cases that CPM cites do not govern this case. In *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 267 (7th Cir. 1984), two private parties disputed the rightful ownership of a patent. The Seventh Circuit held that there was no antitrust injury because, regardless of who rightfully owned the patent, "the power over price that patent rights confer is . . . no greater than it otherwise would be just because the person exercising the rights is not the one entitled by law to do so." *Id.* at 265. This case differs from *Brunswick*, however, because it does not involve the transfer of a monopoly between two private parties. Rather, this case involves the transfer of a state-authorized municipal program to a private contractor. Because there are appreciable differences between a "monopoly" held by a municipality and one held by a private party, *Brunswick* does not control here.

*Alarm Detection Systems, Inc. v. Orland Fire Protection District*, 129 F. Supp. 3d

7

614, 636 (N.D. Ill. 2015), is similarly inapplicable. Although the case, like this one, involved the transfer of a municipal monopoly to a private company, the court in *Alarm Detection Systems* concluded that the plaintiff failed to allege an antitrust injury because it admitted that it was able to compete for business after the private company took over. *Id.* at 635. Here, on the other hand, the plaintiffs allege that CPM holds a monopoly over the Metered Parking System and is able to prevent competition in the market.

### 3. State action immunity

The state action immunity doctrine shields state action from federal antitrust liability if the challenged conduct is "clearly articulated and affirmatively expressed as state policy." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). This immunity extends to a municipality if its "anticompetitive activities were authorized by the State pursuant to state policy to displace competition with regulation or monopoly public service." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38–39 (1985) (internal quotations omitted). To be authorized by the state, the challenged conduct need not be compelled by the state's policy. *Id.* at 45. Rather, it is enough that the challenged action was a foreseeable result of the state's policy. *Id.* at 42.

The Court concludes that state action immunity applies in this case. The Illinois Municipal Code authorizes municipalities to "own, construct, equip, manage, control . . . and operate . . . parking meters." 65 ILCS 5/11-71-1(a). It also permits municipalities to "[e]nter into contracts *dealing in any manner* with the objects and purposes of this Division 71, including the leasing of space on, or in connection with, parking meters for advertising purposes." *Id.* at 5/11-71-1(c) (emphasis added). The grant of an exclusive contract to operate city-owned parking meters is a foreseeable result of these

8

provisions. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 889 (7th Cir. 2011) ("In the context of municipal powers, it is generally understood that the authority to contract contemplates the power to create exclusive contracts.").

The plaintiffs read the Municipal Code differently. They argue that subsection (a) of the Code "presumes that the City will at all times own and operate the parking meters on public streets" and that subsection (c) only authorizes the municipality to lease its rights to parking meters for advertising purposes. Pls.' Resp. at 13. This interpretation, however, is contrary to the text of the Code and state-law principles of statutory interpretation. First, subsection (a) does not compel the City to own and operate the parking meters; it merely authorizes the City to do so if it so chooses. Nothing in the text of the Code suggests that the City is required to own and operate parking meters on public streets.

Second, the text of subsection (c) specifically states that municipalities are authorized to enter into contracts "dealing in *any* manner" with the purposes of subsection (a). 65 ILCS 5/11-71-1(c) (emphasis added). The plaintiffs argue that the phrase "including the leasing of space on . . . parking meters for advertising purposes" limits the City's authority under subsection (c) to advertising contracts. The Court disagrees. Although courts typically interpret general words in light of surrounding words,[2] this rule of construction "should not be used to . . . restrict the scope of the subjects the legislature intended to include within the act." *Hagen*, 18 Ill. 2d at 178, 163 N.E.2d at 498. The phrase "dealing in any manner" indicates that the legislature

---

[2] This principle is commonly referred to as "ejusdem generis." *Hagen v. City of Rock Island*, 18 Ill. 2d 174, 178, 163 N.E.2d 495, 498 (1959).

9

intended to authorize municipalities to enter into a variety of different contracts. Adopting the plaintiffs' interpretation would improperly read this phrase out of the Municipal Code. *See Lysek v. Elmhurst Dodge, Inc.*, 325 Ill. App. 3d 536, 542, 758 N.E.2d 862, 867 (2001) ("As a general rule, courts should avoid interpretations that treat language as surplusage and should instead attempt to give meaning to all of the words used.").

Lastly, the plaintiffs contend that, to avoid liability under the state action immunity doctrine, CPM must show that the Agreement is subject to active supervision by the City. This supposed requirement, however, was rejected by the Supreme Court in *Town of Hallie*. In the case, the Court made clear that "the active state supervision requirement should not be imposed in cases in which the actor is a municipality." *Town of Hallie*, 471 U.S. at 42.

### 4. The ICFA claim

Because the Court dismisses both claims under the Sherman Act, it declines to exercise supplemental jurisdiction over the ICFA claim. *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 896 (7th Cir. 2001). The ICFA claim is therefore dismissed for lack of subject matter jurisdiction.

### Conclusion

For the foregoing reasons, the Court grants CPM's motion to dismiss [dkt. no. 24] and directs the Clerk to enter judgment dismissing Counts 1 and 2 of the plaintiffs' complaint with prejudice and Count 3 for lack of federal subject matter jurisdiction.

Date: January 24, 2022

_____
MATTHEW F. KENNELLY
United States District Judge

Case: 1:21-cv-03364 Document #: 35 Filed: 02/02/22 Page 13 of 19 PageID #:637
ILND 450 (Rev. 04/29/2016) Judgment in a Civil Action
Case: 22-1166   Document: 1-1   Filed: 02/02/2022   Pages: 18

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS

Micah Uetricht and John Kaderbek,

Plaintiff(s),

v.

Chicago Parking Meters LLC,

Defendant(s).

Case No. 21 C 3364

Judge Matthew F. Kennelly

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $

   which ☐ includes       pre–judgment interest.
         ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☑ other: The Court grants CPM's motion to dismiss [dkt. no. 24] and directs the Clerk to enter judgment dismissing Counts 1 and 2 of the plaintiffs' complaint with prejudice and Count 3 for lack of federal subject matter jurisdiction.

---

This action was *(check one)*:

☐ tried by a jury with Judge                              presiding, and the jury has rendered a verdict.
☐ tried by Judge                         without a jury and the above decision was reached.
☑ decided by Judge Matthew F. Kennelly    on a motion.

Date: 1/24/2022                    Thomas G. Bruton, Clerk of Court

                                   Melissa Astell              , Deputy Clerk

APPEAL,FUENTES,TERMED

# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:21−cv−03364

Uetricht et al v. Chicago Parking Meters, LLC  
Assigned to: Honorable Matthew F. Kennelly  
Cause: 28:1337 Sherman−Clayton Act

Date Filed: 06/23/2021  
Date Terminated: 01/24/2022  
Jury Demand: Defendant  
Nature of Suit: 410 Anti−Trust  
Jurisdiction: Federal Question

**Plaintiff**

**Micah Uetricht**  represented by  **Ariel Olstein**  
Chanen & Olstein  
7373 Lincoln Ave. Ste. 100  
Lincolnwood, IL 60712  
847−469−4669  
Email: Ariel@ChanenOlstein.com  
*ATTORNEY TO BE NOTICED*

**Michael Paul Persoon**  
Despres Schwartz & Geoghegan  
77 W. Washington Street  
Chicago, IL 60602  
312 372 2511  
Email: mpersoon@dsgchicago.com  
*ATTORNEY TO BE NOTICED*

**Stuart Jay Chanen**  
Chanen & Olstein  
7373 Lincoln Ave. Ste. 100  
Lincolnwood, IL 60712  
847−469−4669  
Email: Stuart@ChanenOlstein.com  
*ATTORNEY TO BE NOTICED*

**Thomas Howard Geoghegan**  
Despres Schwartz & Geoghegan  
77 West Washington Street  
Suite 711  
Chicago, IL 60602  
(312) 372−2511  
Email: admin@dsgchicago.com  
*ATTORNEY TO BE NOTICED*

**Willem Watson Bloom**  
Despres, Schwartz, and Geoghegan, Ltd.  
Suite 711  
77 W. Washington St,  
312−372−2511  
Email: wbloom@dsgchicago.com  
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marianela D'Aprile**  represented by  **Ariel Olstein**  
*TERMINATED: 09/07/2021*   (See above for address)  
*ATTORNEY TO BE NOTICED*

**Michael Paul Persoon**  
(See above for address)  
*ATTORNEY TO BE NOTICED*

**Stuart Jay Chanen**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Geoghegan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Willem Watson Bloom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Kaderbek**    represented by    **Ariel Olstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Paul Persoon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stuart Jay Chanen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Howard Geoghegan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Willem Watson Bloom**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Chicago Parking Meters, LLC**    represented by    **Dan K. Webb**
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601–9703
(312) 558–5600
Email: dwebb@winston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Conor Adams Reidy**
Winston & Strawn Llp
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558–7542
Email: creidy@winston.com
*ATTORNEY TO BE NOTICED*

**Joseph Laurence Motto**
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558–3728
Email: jmotto@winston.com
*ATTORNEY TO BE NOTICED*

**Robert Y. Sperling**
Winston & Strawn LLP
35 West Wacker Drive

Chicago, IL 60601-9703
(312) 558-5600
Email: rsperling@winston.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/23/2021 | 1 | COMPLAINT filed by Micah Uetricht, John Kaderbek, Marianela D'Aprile; Filing fee $ 402, receipt number 0752-18381248.(Bloom, Willem) (Entered: 06/23/2021) |
| 06/23/2021 | 2 | CIVIL Cover Sheet (Bloom, Willem) (Entered: 06/23/2021) |
| 06/23/2021 |  | CASE ASSIGNED to the Honorable Matthew F. Kennelly. Designated as Magistrate Judge the Honorable Gabriel A. Fuentes. Case assignment: Random assignment. (mp, ) (Entered: 06/23/2021) |
| 06/25/2021 | 3 | ATTORNEY Appearance for Plaintiffs Marianela D'Aprile, John Kaderbek, Micah Uetricht by Ariel Olstein (Olstein, Ariel) (Entered: 06/25/2021) |
| 06/25/2021 | 4 | ATTORNEY Appearance for Plaintiffs Marianela D'Aprile, John Kaderbek, Micah Uetricht by Stuart Jay Chanen (Chanen, Stuart) (Entered: 06/25/2021) |
| 06/30/2021 |  | SUMMONS Issued as to Defendant Chicago Parking Meters, LLC. (ng, ) (Entered: 06/30/2021) |
| 07/05/2021 | 5 | ATTORNEY Appearance for Plaintiffs Marianela D'Aprile, John Kaderbek, Micah Uetricht by Thomas Howard Geoghegan (Geoghegan, Thomas) (Entered: 07/05/2021) |
| 07/05/2021 | 6 | ATTORNEY Appearance for Plaintiffs Marianela D'Aprile, John Kaderbek, Micah Uetricht by Michael Paul Persoon (Persoon, Michael) (Entered: 07/05/2021) |
| 07/05/2021 | 7 | ATTORNEY Appearance for Plaintiffs Marianela D'Aprile, John Kaderbek, Micah Uetricht by Willem Watson Bloom (Bloom, Willem) (Entered: 07/05/2021) |
| 07/06/2021 | 8 | Exhibit A to Plaintiffs' Complaint - June 5, 2013 Parking Meter Concession Agreement (inadvertently omitted) by Marianela D'Aprile, John Kaderbek, Micah Uetricht (Olstein, Ariel) (Entered: 07/06/2021) |
| 07/06/2021 | 9 | AFFIDAVIT of Service filed by Plaintiffs Marianela D'Aprile, John Kaderbek, Micah Uetricht regarding Summons & Complaint served on Defendant Chicago Parking Meters, LLC on 07/06/21 (Olstein, Ariel) (Entered: 07/06/2021) |
| 07/19/2021 | 10 | ATTORNEY Appearance for Defendant Chicago Parking Meters, LLC by Dan K. Webb (Webb, Dan) (Entered: 07/19/2021) |
| 07/19/2021 | 11 | ATTORNEY Appearance for Defendant Chicago Parking Meters, LLC by Joseph Laurence Motto (Motto, Joseph) (Entered: 07/19/2021) |
| 07/19/2021 | 12 | ATTORNEY Appearance for Defendant Chicago Parking Meters, LLC by Conor Adams Reidy (Reidy, Conor) (Entered: 07/19/2021) |
| 07/19/2021 | 13 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Chicago Parking Meters, LLC (Motto, Joseph) (Entered: 07/19/2021) |
| 07/19/2021 | 14 | MOTION by Defendant Chicago Parking Meters, LLC for extension of time to file answer *or Otherwise Plead (Unopposed)*, MOTION by Defendant Chicago Parking Meters, LLC for leave to file excess pages *(Unopposed)* (Motto, Joseph) (Entered: 07/19/2021) |
| 07/20/2021 | 15 | MINUTE entry before the Honorable Matthew F. Kennelly: Defendant's unopposed motion for extension of time and to extend page limitation 14 is granted. Response to complaint is to be filed by 8/10/2021. Brief in support of motion to dismiss may be up to 25 pages long. (mk) (Entered: 07/20/2021) |
| 08/05/2021 | 16 | ATTORNEY Appearance for Defendant Chicago Parking Meters, LLC by Robert Y. Sperling (Sperling, Robert) (Entered: 08/05/2021) |
| 08/10/2021 | 17 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Chicago Parking Meters, LLC (Motto, Joseph) (Entered: 08/10/2021) |

| | | |
|---|---|---|
| 08/10/2021 | 18 | MEMORANDUM by Chicago Parking Meters, LLC in support of Motion to Dismiss for Failure to State a Claim 17 (Motto, Joseph) (Entered: 08/10/2021) |
| 08/11/2021 | 19 | MINUTE entry before the Honorable Matthew F. Kennelly: This case is set for telephonic status hearing on 8/16/2021 at 8:55 AM, using call−in number 888−684−8852, access code 746−1053. Counsel should wait for the case to be called before announcing themselves. Plaintiffs' counsel should be prepared to discuss whether they with to respond to the motion to dismiss or amend their complaint, as well as an appropriate schedule for either. (mk) (Entered: 08/11/2021) |
| 08/11/2021 | 20 | MINUTE entry before the Honorable Matthew F. Kennelly: This case is set for telephonic status hearing on 8/16/2021 at 8:55 AM, using call−in number 888−684−8852, access code 746−1053. Counsel should wait for the case to be called before announcing themselves. Plaintiffs' counsel should be prepared to discuss whether they wish to respond to the motion to dismiss or amend their complaint, as well as an appropriate schedule for either. (mk) (Entered: 08/11/2021) |
| 08/16/2021 | 21 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 8/16/2021. Plaintiff has until 9/7/2021 to file an amended complaint. A telephonic status hearing is set for 9/13/2021 at 9:15 a.m. The following call−in number will be used for the hearing: 888−684−8852 conference code 746−1053. Mailed notice. (mma, ) (Entered: 08/16/2021) |
| 09/07/2021 | 22 | *First* AMENDED complaint by Micah Uetricht, John Kaderbek against Chicago Parking Meters, LLC and terminating Marianela D'Aprile (Attachments: # 1 Exhibit A)(Bloom, Willem) (Entered: 09/07/2021) |
| 09/13/2021 | 23 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 9/13/2021. Defendant's motion to dismiss 17 is terminated as moot. Defendant's motion to dismiss the amended complaint is to be filed by 9/27/2021. Plaintiff's response is due 10/18/2021; defendant's reply is due 11/1/2021. The defendant's have leave to file up to 25 pages for the motion to dismiss. The plaintiff's have leave to file up to 25 pages for the response. The reply is to be 15 pages. A telephonic status hearing is set for 12/8/2021 at 9:00 a.m. The following call−in number will be used for the hearing: 888−684−8852, access code 746−1053. Mailed notice. (mma, ) (Entered: 09/13/2021) |
| 09/27/2021 | 24 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Chicago Parking Meters, LLC , MOTION by Defendant Chicago Parking Meters, LLC to dismiss for lack of jurisdiction (Motto, Joseph) (Entered: 09/27/2021) |
| 09/27/2021 | 25 | MEMORANDUM by Chicago Parking Meters, LLC in support of Motion to Dismiss for Failure to State a Claim, motion to dismiss/lack of jurisdiction 24 (Motto, Joseph) (Entered: 09/27/2021) |
| 10/07/2021 | 26 | MOTION by Plaintiffs John Kaderbek, Micah Uetricht for extension of time to file response/reply as to Motion to Dismiss for Failure to State a Claim, motion to dismiss/lack of jurisdiction 24 , memorandum in support of motion 25 (Chanen, Stuart) (Entered: 10/07/2021) |
| 10/14/2021 | 27 | MINUTE entry before the Honorable Matthew F. Kennelly: Plaintiffs' motion for extension of time 26 is granted. The plaintiffs' response to the defendant's motion to dismiss is due by 10/25/2021; defendant's reply is due 11/8/2021. Mailed notice. (mma, ) (Entered: 10/14/2021) |
| 10/25/2021 | 28 | RESPONSE by John Kaderbek, Micah Uetrichtin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Chicago Parking Meters, LLC MOTION by Defendant Chicago Parking Meters, LLC to dismiss for lack of jurisdiction 24 (Chanen, Stuart) (Entered: 10/25/2021) |
| 11/08/2021 | 29 | REPLY by Chicago Parking Meters, LLC to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Chicago Parking Meters, LLC MOTION by Defendant Chicago Parking Meters, LLC to dismiss for lack of jurisdiction 24 (Motto, Joseph) (Entered: 11/08/2021) |
| 12/08/2021 | 30 | MINUTE entry before the Honorable Matthew F. Kennelly: Telephonic status hearing held on 12/8/2021. Case is set for a telephonic status hearing and ruling on the motion hearing are set for 1/31/2022 at 9:00 a.m. The following call−in number will be used: |

| | | |
|---|---|---|
| | | 888–684–8852; access code 746–1053. Mailed notice. (mma, ) (Entered: 12/08/2021) |
| 01/24/2022 | 31 | MEMORANDUM Opinion and Order: The Court grants CPM's motion to dismiss [dkt. no. 24] and directs the Clerk to enter judgment dismissing Counts 1 and 2 of the plaintiffs' complaint with prejudice and Count 3 for lack of federal subject matter jurisdiction. Civil case terminated. Signed by the Honorable Matthew F. Kennelly on 1/24/2022. Mailed notice. (mma, ) (Entered: 01/24/2022) |
| 01/24/2022 | 32 | ENTERED JUDGMENT. Mailed notice. (mma, ) (Entered: 01/24/2022) |
| 02/01/2022 | 33 | NOTICE of appeal by John Kaderbek, Micah Uetricht regarding orders 32 Filing fee $ 505, receipt number 0752–19113937. Receipt number: n (Geoghegan, Thomas) (Entered: 02/01/2022) |
| 02/02/2022 | 34 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 33 (daj, ) (Entered: 02/02/2022) |
| 02/02/2022 | 35 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 33 . Notified counsel (daj, ) (Entered: 02/02/2022) |