No. 22-1166
_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**
_____


**Micah Uetricht and John Kaderbek,**

Plaintiffs-Appellants,

v.

**Chicago Parking Meters, LLC,**

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Illinois,
Case No. 1:21-CV-03364
The Honorable Matthew F. Kennelly

_____

**REPLY BRIEF OF
PLAINTIFFS-APPELLANTS**
_____

DESPRES, SCHWARTZ & GEOGHEGAN, LTD.
Thomas H. Geoghegan (*counsel of record*)
Michael P. Persoon
Willem Bloom
77 West Washington-street, Suite 711
Chicago, Illinois 60602
(312) 372-2511

CHANEN & OLSTEIN
Stuart J. Chanen
Ariel Olstein
7373 N. Lincoln Ave.
Suite 100
Lincolnwood, IL 60712
(847) 469-4669

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ...........................................................................ii

ARGUMENT ...............................................................................................1

    I.  The statutory authorization relied on by CPM, 65 ILCS 5/11-71-1 (a.k.a. "Division 71") provides no "clearly articulated and affirmatively expressed" policy in favor of its private monopoly. ..............................................................................3

    II. *Hallie* does not exempt CPM from the second *Midcal* requirement of active supervision by the State when the municipality itself has given up or limited its authority to do so............................................................................................8

    III. CPM can claim no prejudice from a suit for prospective injunctive relief; laches is an affirmative defense not addressable on a motion to dismiss; and no claim of laches is applicable to a continuing violation under the Sherman Act. ................................................................................12

CONCLUSION...........................................................................................15

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE LIMITATIONS .........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Active Waste Disposal, Inc., v. City of Darien,*
635 F.3d 883 (7th Cir. 2011) ............................................................... 10

*Alarm Detection Sys. v. Orland Fire Prot. Dist.,*
129 F. Supp. 3d 614 (N.D. Ill. 2015) .................................................. 15

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum Inc.,*
445 U.S. 97 (1980) .....................................................................*passim*

*Cannon v. Univ. Health Sci./Chi. Med. Sch.,*
710 F.2d 351 (7th Cir. 1983) ............................................................... 14

*Chamber of Commerce of the United States v. City of Seattle,*
890 F.3d 769 (9th Cir. 2018) ................................................................ 10

*Charley's Taxi Radio Dispatch v. SIDA of Hawaii, Inc.,*
810 F.2d 869 (9th Cir. 1987) ............................................................... 11

*Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.,*
790 F.2d 1032 (2nd Cir. 1986) ............................................................ 10

*FTC v. Phoebe Putney Health Systems*
568 U.S. 216 (2013) ............................................................................... 7

*Green Sols. Recycling, LLC v. Reno Disposal Co., Inc.,*
814 F. Appx. 218 (9th Cir. 2020) ........................................................ 10

*Hannemann v. S. Door Cnty. Sch. Dist.,*
673 F.3d 746 (7th Cir. 2012) ................................................................. 6

*Hanover Shoe v. United Shoe Mach. Corp.,*
392 U.S. 481 (1968) .............................................................................. 14

*Hot Wax Inc. v. Turtle Wax Inc.,*
191 F.3d 813 (7th Cir. 1999) ............................................................... 14

*ISI Int'l., Inc. v. Borden Ladner Gervais LLP,*
    256 F.3d 548 (7th Cir. 2001) ................................................................. 5

*Jeffries v. Chicago Transit Auth.,*
    770 F.2d 676 (7th Cir. 1985) ................................................................ 12

*Justice v. Town of Cicero,*
    577 F.3d 768 (7th Cir. 2008) ................................................................. 9

*Kamen v. Kemper Fin. Serv. Inc.,*
    500 U.S. 90 (1991) ................................................................................ 5

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997) ............................................................................ 14

*Lafaro v. New York Cardiothoracic Group,*
    570 F.3d 471 (2009) ........................................................................ 8, 11

*Maher v. City of Chi.*
    547 F.3d 817 (7th Cir. 2008) .............................................................. 14

*Marrese v. Deacon Hospitals*
    1992 U.S. App. LEXIS 13340, at *44 (7th Cir.) .................................... 2

*Michigan Paytel Joint Venture v. City of Detroit,*
    287 F.3d 527 (6th Cir. 2002) ......................................................... 11, 12

*Midwestern Mach. Co. v. Northwest Airlines, Inc.,*
    392 F.3d 265 (8th Cir. 2004) .............................................................. 15

*Oliver v. SD-3C,*
    751 F.3d 1081 (9th Cir. 2014) ............................................................ 15

*Parker v. Brown*,
    317 U.S. 341 (1943) ..................................................................*passim*

*Patrick v. Burget,*
    486 U.S. 94 (1988) ...................................................................2, 9, 10

*Richards v. Mitcheff,*
696 F.3d 635 (7th Cir. 2012) ................................................................ 12

*Topping v. Fry,*
147 F.2d 715 (7th Cir. 1945) ................................................................ 12

*Town of Hallie v. City of Eau Claire,*
471 U.S. 34 (1984) ...................................................................... 8, 9, 11

*U.S. v. Robl,*
8 F.4th 515 (7th Cir. 2021) .................................................................... 5

*Xechem, Inc. v. Bristol Myers Squibb Co.,*
372 F.3d 899 (7th Cir. 2004) ................................................................ 14

*Yates v. United States,*
574 U.S. 528 (2015) ............................................................................... 6

*Zenith Radio Corp. v. Hazeltine Research Inc.,*
401 U.S. 321 (1971) ............................................................................. 14

**Statutes**

Clayton Act 15 USC § 16 ...................................................................... 15

Sherman Act 15 USC §§ 1-2 ..........................................................*passim*

65 ILCS 5/11-71-1 ..........................................................................*passim*

**Additional Authorities**

*Black's Law Dictionary*
(11th ed. 2019) ....................................................................................... 6

Spielman, *Parking meter deal gets even worse for Chicago taxpayers, annual audit shows,*
Chicago Sun-Times, (May 26, 2022), https://chicago.suntimes.com/city-hall/2022/5/26/23143356/chicago-parking-meters-75-year-lease-daley-city-council-audit-skyway-loop-garages-krislov ........................................... 1

## ARGUMENT

To restate the case: As a private entity, defendant Chicago Parking Meters, LLC ("CPM") has no *Parker* state-action immunity for a 75-year monopoly of Chicago's parking meter system. *Parker v. Brown*, 317 U.S. 341 (1943). Plaintiffs challenge this monopoly by a for-profit business as a violation of Section 2 of the Sherman Act and in the alternative as an unlawful exclusive dealing contract for 75 years, in violation of Section 1 of the Sherman Act. 15 USC §§ 1-2.

Under the CPM Agreement, CPM has acquired extraordinary barriers to limit or restrict the City's control over parking meter rates, number of meters, hours operation, and any removal of meters for street closures and alternative forms of transportation. CPM can and does limit this control if it interferes in any manner with CPM's profit or maximization of its revenue.

As reported in *The Chicago Sun-Times* on May 27, 2022, CPM's revenue from the City's on-street parking meter system was $136.2 million last year. "With 61 years to go on the 75-year lease, Chicago Parking Meters LLC has recouped its entire $1.16 billion investment, plus $502.5 million more." Spielman, *Parking meter deal gets even worse for Chicago taxpayers, annual audit shows,* Chicago Sun-Times, (May 26, 2022), https://chicago.suntimes.com/city-hall/2022/5/26/23143356/chi-cago-parking-meters-75-year-lease-daley-city-council-audit-skyway-loop-gar-ages-krislov. The *Sun-Times* article notes that the revenue total last year to CPM

was "way higher than the $23.8 million in meter payments in 2008, the year before CPM took over the system." The CPM Agreement bars the City from resumption of control or competition from a rival bidder for another 61 years unless the financially strapped City buys out CPM by paying billions of dollars. The magnitude of such payment is hard to calculate and, in any event, beyond the City's ability to pay.

CPM fails to meet the two *Midcal* factors required for a private entity to have *Parker* immunity—factors which both the Supreme Court and this Circuit have described as "rigorous." See, *Patrick v. Burget,* 486 U.S. 94, 100 (1988); *Marrese v. Deacon Hospitals,* 1992 U.S. App. LEXIS 13340, at *44 (7th Cir.). See also *California Retail Liquor Dealers' Ass'n v. Midcal Aluminum,* 445 U.S. 97 (1980). First, there is no "clearly articulated and affirmatively expressed" state policy in favor of this monopoly. *Midcal,* 445 U.S. at 105. Second, CPM's activities are not being "actively supervised" by the State nor the City. *Id.* Here, CPM must establish *both* elements, but, in fact, it has established neither. The bottom line is that no Illinois law permits a private entity to have such governmental-type control over a municipality's parking meter system without active governmental supervision, much less have such control unimpeded for 75 years.

**I.      The statutory authorization relied on by CPM, 65 ILCS 5/11-71-1 (a.k.a. "Division 71") provides no "clearly articulated and affirmatively expressed" policy in favor of its private monopoly.**

As Plaintiffs argued in the District Court, the text of 65 ILCS 5/11-71-1(a) and (c) provides no authority for CPM's private takeover of the City's on-street parking meter system, let alone for 75 years. Even the District Court agreed that subsection (a) was not the basis of *Parker* immunity, and therefore the District Court at least implicitly acknowledged that it did not authorize the CPM Agreement. Section 11-71-1 (a) states:

> Any municipality is hereby authorized to:
>
> (a) Acquire by purchase or otherwise, own, construct, equip, manage, control, erect, improve, extend, maintain and operate motor vehicle parking lot or lots, garage or garages constructed on, above and/or below ground level, public off-street parking facilities for motor vehicles, parking meters, and any other revenue producing facilities, hereafter referred to as parking facilities…

The words "manage, control… maintain *and* operate" (emphasis added) require that the City retain control of its parking meter facilities—not turn them over to a for-profit business-like CPM to operate and extract all the revenue. The use of the conjunctive "and" is controlling on this point. Subparagraph (a) does not come close to describing the CPM Agreement.

Instead of sub-paragraph (a), the District Court found the authority in Section 11-71-1(c), which states in part:

> Any municipality is hereby authorized to:

(c) Enter into contracts dealing in any manner with the objects and purposes of this Division 71, including the leasing of space on, or in connection with, parking meters for advertising purposes.

The District Court italicized the words "in *any* manner" and stated that "in *any* manner" was enough to justify the CPM Agreement and sufficient to meet the first *Midcal* factor for a *Parker* exemption from liability under the Sherman Act. The District Court's reliance on of subsection (c), however, is wrong and contradictory. Section 11-71-1(c) expressly refers to contracts "dealing in any manner with the objects and purposes of this Division 71," which are set out in subparagraph (a). The District Court has already implicitly acknowledged that subparagraph (a) does not authorize the CPM Agreement and that it is not within the objects and purposes of that subparagraph. It is therefore illogical that the term "contract" in subparagraph (c) can include a "contract" for an object or purpose that is not within subparagraph (a), which authorize municipalities to directly operate and manage *parking facilities*.

CPM argues that Plaintiffs waived the argument that Division 71 applies only to "Off-street Parking," not to the on-street meter parking system transferred under the CPM Agreement. CPM's waiver argument should be rejected for several reasons.

First, in the briefing before the District Court below, Plaintiffs did include or present the relevant statutory text, including the heading "Off-street Parking," for

the interpretation of the District Court. Plaintiffs also contended emphatically that neither subparagraph (a) nor (c) authorized this transfer of the on-street parking meter system, as the District Court's opinion and the record make clear.

Making the point stronger on appeal does not raise a new argument: it is just another part of an argument that Plaintiffs did make below, *i.e.,* that the text of Section 11-71-1 is not applicable at all to the CPM Agreement. Parties are not limited to a cut-and-paste appeal.

In any event, even if Plaintiffs had never raised the text of Division 71 below, as they did, this Court would still have the discretion to use the heading of Division 71 to determine what it means. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Serv. Inc.*, 500 U.S. 90, 99 (1991); see, *U.S. v. Robl,* 8 F.4th 515, 528 n.32 (7th Cir. 2021); see also, *ISI Int'l., Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 551 (7th Cir. 2001) ("Federal courts are entitled to apply the right body of law, whether the parties name it or not.").

The text is also consistent with the heading: it has no specific reference to meters on the public streets. All the specifically described parking facilities in the statute are designated as off-street parking. These facilities include "parking lot or lots, garage or garages constructed on, above and/or below ground level, public

off-street parking facilities… parking meters, and any other revenue producing facilities…."65 ILCS 5/11-71-1(a). CPM treats the term "parking meters" as referring to on-street meters as well as meters in parking lots or in off-street facilities. This is a strained interpretation. Under the principle *noscitur a sociis,* a word or term is known by the company it keeps. *Yates v. United States*, 574 U.S. 528, 543 (2015); see also, *noscitur a sociis*, *Black's Law Dictionary* (11th ed. 2019). Since all the specifically described facilities are off-street parking, it follows that the term "parking meters" refers to the meters that such facilities might have.

In sum, waiver and forfeiture are simply inapplicable here. Those doctrines are applied when—as in the cases cited by CPM—a party makes a brand-new claim or defense on appeal not raised in the District Court *at all*. See, e.g., *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 754 (7th Cir. 2012), cited by CPM. Here, CPM cannot in good faith assert that Plaintiffs did not argue that Division 71 did not authorize the CPM agreement. And, at any rate, because CPM argues on appeal that Division 71 *does* authorize the CPM Agreement as a basis for upholding the District Court, Appellants are entitled to argue against that proposition.

Finally, and separate and apart from the on-street/off-street distinction raised below, as Plaintiffs also argued in the District Court, the CPM Agreement as a contract also does not meet the requirement in the last sentence of subparagraph (c), which says: "All revenues derived from any such contract shall be used

exclusively for traffic regulation and maintenance of streets within the municipality." While the District Court took no note of this sentence, it can hardly be said to authorize a contract that last year took $136.2 million in revenue and did not provide a penny to the City. Even if it is read to apply to the initial payment of $1.1 billion paid by CPM to the City, that payment was not used for "traffic regulation and maintenance of the streets," as the statute requires. This is yet another reason to reject Division 71 as providing a "clearly articulated and affirmatively expressed" state policy in favor of CPM's 75-year monopoly of on-street parking. As such, CPM has failed to establish a "clearly articulated and affirmatively expressed" state policy in favor of CPM's 75-year monopoly. *Midcal, supra,* 445 U.S. at 105. The District Court erroneously held that a policy meeting this standard can come from vague general authority to enter a contract "dealing in any manner" with the subject of parking. Under controlling Supreme Court law, such a general grant of authority is not enough. That kind of reasoning was expressly rejected in *FTC v. Phoebe Putney Health. Systems,* 568 U.S. 216 (2013). CPM's 75-year private monopoly of the on-street parking meter system is not even close to being "reasonably anticipated" from any part of Division 71. *FTC v. Phoebe Putney* at 223.

II. *Hallie* **does not exempt CPM from the second** *Midcal* **requirement of active supervision by the State when the municipality itself has given up or limited its authority to do so.**

In addition, there is no case holding what CPM claims—that a for-profit, private entity can have *Parker* immunity for exercising governmental discretion without being actively supervised by the State. *Hallie* says that no such active supervision by the State is necessary only when the municipality is the sole actor – that is, the sole actor exercising any governmental-type discretion. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34 (1984). As Plaintiffs argued in the opening brief, *Hallie's* footnote 10 makes explicit what is clear in the rest of the opinion. "Where state or municipal regulation by a private party is involved, however, *active state supervision* must be shown, even where a clearly articulated state policy exists." *Id.* at 46 n.10 (1984) (emphasis supplied). Under the CPM Agreement, there is no active supervision by the City over CPM unless the City pays for it, and there is no supervision by the State at all.

Even cases cited by CPM hold that when a private entity is exercising some governmental-type discretion, the State must be the "effective decision maker," or there is no *Parker* immunity. *Lafaro v. New York Cardiothoracic Group,* 570 F.3d 471, 477 (2nd Cir. 2009). Nor is the State required to pay a private entity to be the effective decision maker. CPM asserts that the City is in "ultimate control" just as the Court required in *Patrick v. Burget,* 486 U.S. 94 (1988) and other cases cited at pages

11-13 of its brief. In *Patrick*, however, the Court required that the State of Oregon have the final and unrestricted power to overturn decisions of a state medical board made up of private physicians. By "ultimate control," the Court meant complete *de novo* review of the specific decision and not just some limited or general oversight. The City of Chicago has no such control over CPM—it has to bargain out decisions about the removal of meters as well as other aspects of transportation policy. Unless the City pays up, CPM remains in effective control of the parking meter system.

As Plaintiffs noted in the opening brief, buying a release from the CPM Agreement would require the City to pay CPM billions of dollars—far above the financially strapped City's ability. There is no practical way to regain from CPM the unrestricted control of governmental functions. All of the post *Hallie* cases cited by CPM in its brief are *either* cases where the municipality is the sole actor *or* cases where a private entity is not exercising or controlling any governmental-type function in the first place.

In the first class of post *Hallie* cases, CPM cites decisions where no private entity is involved. See, *e.g., Justice v. Town of Cicero*, 577 F.3d 768 (7th Cir. 2008). In the second class of cases, CPM cites decisions where the private entity is not exercising any true governmental-type discretion free of the municipality's control. In these cases, the private contractors are simply doing a job under full control of the State

9

or one of its subdivisions. For example, in *Green Sols. Recycling, LLC v. Reno Disposal Co., Inc.*, 814 F. Appx. 218 (9th Cir. 2020), the Ninth Circuit found that the City of Reno's contract with a private disposal company did not require the State's active supervision because that private business had no independent government-type "discretion." As the Court explained, "this is not a case in which 'the anticompetitive restraint [under *Parker*] turns on the discretion of private actors.'" *Id.* at 221, citing *Chamber of Commerce of the United States v. City of Seattle,* 890 F.3d 769, 788-89, 789 n.16 (9th Cir. 2018). Or put another way, all the private entity is doing is disposing of trash, which does not involve sovereign-type decision making, like the boards made up of private actors in cases like *Midcal* or *Patrick.* A similar distinction is the underpinning of this Circuit's decision in *Active Waste Disposal, Inc., v. City of Darien,* 635 F.3d 883 (7th Cir. 2011), another trash hauling case where state law specifically authorized trash contracts. Hauling the trash away does not involve the exercise of governmental-type discretion.

Though not a trash hauling case, a similar distinction is also apparent in *Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.,* 790 F.2d 1032 (2nd Cir. 1986), another case cited by CPM. Here, a rival theater company challenged the contracts issued by the New York State Urban Development Corporation to certain other companies to fix up and refurbish various Manhattan theaters. The case held that the state agency had express authority under New York law for such rehabbing. In

turn, the state agency's *Parker* immunity covered the contractors as well, as they were not exercising any regulatory function other than fixing up the theaters. By contrast, in *Lafaro v. New York Cardiothoracic Group,* cited by CPM, a private entity with a role in a state regulatory scheme is only protected under *Parker* if the government is in charge and fully able to reverse its decisions. *Lafaro*, 570 F.3d at 477.

In another case cited by CPM, *Charley's Taxi Radio Dispatch v. SIDA of Hawaii, Inc.,* 810 F.2d 869 (9th Cir. 1987), it is also clear the private taxi drivers have no governmental-type discretion. In that case, the Court found that the State of Hawaii transportation department had authority to give an association of independent cab drivers an exclusive contract to pick up passengers at the Honolulu airport. But, like taxi drivers everywhere, they remained under minute regulation as to how they performed their jobs. The question of their active supervision was not even an issue in the case.

On the other hand, CPM's citation of *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527 (6th Cir. 2002) supports the case made here *by Plaintiffs*. In that case, while the Sixth Circuit found that the municipality was entitled to *Parker* protections under *Hallie*, its private contracting partner was not, and was instead subjected to the higher standard present in *Midcal*. In a case involving bid rigging, the Sixth Circuit declared: "If the private actor was the effective decisionmaker, due to corruption of the decision-making process or delegation of decision-making

11

authority, then it is not immune, unless it can show that it was actively supervised by the state." *Id* at 538.

CPM has paid to limit the decision-making authority of the City, and there is no active supervision by the State as required in *Michigan Paytel Joint Venture.* Thus, CPM is a private entity that is the "effective decision-maker," which will keep a particular kind of parking meter system for another 61 years. It is time, at least prospectively, to end this form of government. There is no *Parker* exemption for a private entity that has such authority over governmental-type decisions.

### III. CPM can claim no prejudice from a suit for prospective injunctive relief; laches is an affirmative defense not addressable on a motion to dismiss; and no claim of laches is applicable to a continuing violation under the Sherman Act.

There is no basis for a defense of laches to a claim for prospective injunctive relief. First, laches is an affirmative defense which must be proven by the defendant. *Jeffries v. Chicago Transit Auth.,* 770 F.2d 676, 679 (7th Cir. 1985). As this Circuit has repeatedly said, this defense should not be raised or granted on a Rule 12(b)(6) motion to dismiss. *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012); *Topping v. Fry,* 147 F.2d 715, 718 (7th Cir. 1945); *Jeffries,* 770 F.2d at 679. In fact, the District Court did not address it for this reason. Dkt. 19.

In any event, CPM has no basis to claim any prejudice from the filing of this action for prospective injunctive relief, with 61 years left to go on the CPM Agreement. CPM complains of a "significant expenditure of time and money—more

than $1 billion, and 12.5 years of operations, maintenance, and upgrades to the system." CPM neglects to mention, however, that CPM has already recovered its entire original investment and made a profit of $502.5 million from what is a continuing violation of Sections 1 and 2 of the Sherman Act. CPM just asserts rhetorically that it is "inexcusable" for Plaintiffs to have delayed so long, *while it made all that money*.

That argument misses the point completely. This is a suit for prospective injunctive relief for a prospective class under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs are not seeking damages. Plaintiffs are seeking no disgorgement of CPM's illegal profit. Plaintiffs are seeking only prospective relief. Therefore, CPM does not have any good faith argument that the delay harmed them in any way. They are not in any way disadvantaged by having to defend the next 61 years of the contract, just as they would not be disadvantaged had Plaintiffs waited an additional six years, and CPM was forced to defend only the last 55 years of the contract.

Finally, laches does not apply to Sherman Act claims involving continuing violations. Every day, Plaintiffs and other consumers are required to enrich CPM by paying one of the highest meter rates in the country, far higher than comparable cities like Houston or Los Angeles. "The period of limitations for antitrust litigation," this Circuit has stated, "runs from the most recent injury caused by the

defendants' activities rather than from the violation's inception." *Xechem, Inc. v. Bristol Myers Squibb Co.,* 372 F.3d 899, 902 (7th Cir. 2004), citing *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321 (1971). See also, *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 502, n.15. (1968).

In *Zenith Radio,* the Supreme Court said, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and… as to those damages, the statute of limitations runs from the commission of the act." *Zenith Radio,* 401 U.S. at 338. Similarly, in *Klehr v. A.O. Smith Corp.,* 521 U.S. 179 (1997), the Court stated that each unlawfully priced sale under an unlawful agreement starts the statutory period running again. *Id.* at 189. This principle applies with even more force to a case seeking only prospective injunctive relief—Plaintiffs are not seeking to recover for any injury outside the statute of limitations. Every swipe of a credit card at a meter is a fresh injury.

Nearly all the cases cited by CPM involve claims of laches under laws other than the Sherman Act or they do not involve continuing violations. These include *Hot Wax Inc. v. Turtle Wax Inc.,* 191 F.3d 813 (7th Cir. 1999) (Lanham Act claim of rival company), *Cannon v. Univ. Health Sci./Chi. Med. Sch.,* 710 F.2d 351 (7th Cir. 1983) (employment discrimination claim), *Maher v. City of Chi.,* 547 F.3d 817 (7th Cir. 2008) (wrongful demotion of a City worker), and others equally without merit.

14

There is similarly no support from the district court opinion in *Alarm Detection Sys. v. Orland Fire Prot. Dist.,* 129 F. Supp. 3d 614 (N.D. Ill. 2015). While *Alarm Detection* is an antitrust case, the district court did not make a finding of laches; rather, it held that the one-time adoption of an exclusionary contract or franchise was not a continuing violation with respect to a competitor. Nor is laches applied in any other case of a continuing violation. CPM miscites *Oliver v. SD-3C,* 751 F.3d 1081 (9th Cir. 2014), which in fact denies that laches applied to a claim of a continuing violation under the Sherman Act. Likewise, while laches may apply to a belated claim challenging a corporate merger under the Clayton Act (15 USC § 16), this occurs only because, in such a case, there is no continuing violation or further "overt act" once the merger is complete. See, *Midwestern Mach. Co. v. Northwest Airlines, Inc.,* 392 F.3d 265, 277 (8th Cir. 2004).

CPM cites no case that holds that laches is a defense to a continuing violation under the Sherman Act, such as Plaintiffs have alleged here. Nor is the claim properly before this Court as support for a motion to dismiss.

## CONCLUSION

For all the above reasons, Plaintiffs respectfully request that this Court reverse the judgment of the District Court and remand the case for further proceedings.

Dated: June 1, 2022                                    Respectfully submitted,

                                                          /s/ Thomas H. Geoghegan
                                                       Attorney for Plaintiffs-Appellants

Thomas H. Geoghegan (*counsel of record*)
Michael P. Persoon
Willem W. Bloom
DESPRES, SCHWARTZ & GEOGHEGAN, LTD.
77 West Washington-street, Suite 711
Chicago, Illinois 60602
(312) 372-2511

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
7373 N. Lincoln Avenue, Suite 100
Lincolnwood, IL 60712
(847) 469-4669

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE LIMITATIONS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and Cir. R. 32(c) because the brief contains 15 pages and 3,759 number of words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 13-point Book Antiqua type.

Dated: June 1, 2022                         ___/s/ Thomas H. Geoghegan___
                                            Attorney for Plaintiffs-Appellants