No. 22-1166
_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**
_____

**Micah Uetricht and John Kaderbek,**

Plaintiffs-Appellants,

v.

**Chicago Parking Meters, LLC,**

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Illinois,
Case No. 1:21-CV-03364
The Honorable Matthew F. Kennelly

_____

**PETITION FOR REHEARING AND SUGGESTION
FOR REHEARING EN BANC OF PLAINTIFFS-APPELLANTS,
AND IN THE ALTERNATIVE, MOTION TO CERTIFY
QUESTION OF STATE LAW TO THE ILLINOIS SUPREME COURT**

_____

DESPRES, SCHWARTZ & GEOGHEGAN, LTD.
Thomas H. Geoghegan (*counsel of record*)
Michael P. Persoon
Willem Bloom
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511

CHANEN & OLSTEIN
Stuart J. Chanen
Ariel Olstein
7373 N. Lincoln Ave.
Suite 100
Lincolnwood, IL 60712
(847) 469-4669

| Save As | Clear Form |
|---|---|

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1166

Short Caption: Michah Uetricht, et al. v. Chicago Parking Meters, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellants Micah Uetricht and John Kaderbek

The only new information on this form is counsel's appearance for Plaintiff-Appellants.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Despres, Schwartz, & Geoghegan, Ltd.

Chanen & Olstein

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Thomas H. Geoghegan    Date: 04/08/2022

Attorney's Printed Name: Thomas H. Geoghegan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 77 W. Washington St., Suite 711, Chicago, IL 60602

Phone Number: (312) 372-2511    Fax Number: (312) 372-7391

E-Mail Address: tgeoghegan@dsgchicago.com, admin@dsgchicago.com

rev. 12/19 AK

Save As　　Clear Form

### APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1166

Short Caption: Michah Uetricht, et al. v. Chicago Parking Meters, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellants Micah Uetricht and John Kaderbek

The only new information on this form is counsel's appearance for Plaintiff-Appellants.

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Despres, Schwartz, & Geoghegan, Ltd.

Chanen & Olstein

(3)　　If the party, amicus or intervenor is a corporation:

i)　　Identify all its parent corporations, if any; and

n/a

ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Michael P. Persoon　　　Date: 04/08/2022

Attorney's Printed Name: Michael P. Persoon

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☐　No ☑

Address: 77 W. Washington St., Suite 711, Chicago, IL 60602

Phone Number: (312) 372-2511　　　Fax Number: (312) 372-7391

E-Mail Address: mpersoon@dsgchicago.com, admin@dsgchicago.com

rev. 12/19 AK

ii

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1166

Short Caption: Michah Uetricht, et al. v. Chicago Parking Meters, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellants Micah Uetricht and John Kaderbek

The only new information on this form is counsel's appearance for Plaintiff-Appellants.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Despres, Schwartz, & Geoghegan, Ltd.

Chanen & Olstein

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Will W. Bloom    Date: 04/08/2022

Attorney's Printed Name: Will W. Bloom

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 77 W. Washington St., Suite 711, Chicago, IL 60602

Phone Number: (312) 372-2511    Fax Number: (312) 372-7391

E-Mail Address: wbloom@dsgchicago.com, admin@dsgchicago.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1166

Short Caption: Micah Uetricht, et al v. Chicago Parking Meters, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Plaintiff-Appellants Micah Uetricht and John Kaderbek

 The only new information on this form is counsel's additional appearance for Plaintiff-Appellants.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Despres, Schwartz and Geoghegan Ltd. (appearance already on file)

(3)     If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

            N/A

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        N/A

Attorney's Signature: /s/ Stuart Chanen                Date: 2/28/2022

Attorney's Printed Name:  Stuart J. Chanen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address:  Chanen & Olstein 7373 Lincoln Ave, Suite 101 Lincolnwood, IL 60712

Phone Number: 847-469-4669                Fax Number:  847-469-4669

E-Mail Address: Stuart@ChanenOlstein.com (Hannah@ChanenOlstein.com)

rev. 12/19 AK

iv

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1166

Short Caption: Micah Uetricht, et al v. Chicago Parking Meters, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
   Plaintiff-Appellants Micah Uetricht and John Kaderbek

   The only new information on this form is counsel's additional appearance for Plaintiff-Appellants.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   Despres, Schwartz and Geoghegan Ltd. (appearance already on file)


(3)     If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

           N/A

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Ariel Olstein                          Date: 2/28/2022

Attorney's Printed Name: Ariel Olstein

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Chanen & Olstein 7373 Lincoln Ave, Suite 101 Lincolnwood, IL 60712


Phone Number: 847-469-4669                          Fax Number: 847-469-4669

E-Mail Address: Ariel@ChanenOlstein.com (Hannah@ChanenOlstein.com)

rev. 12/19 AK

# TABLE OF CONTENTS

DISCLOSURE STATEMENTS ........................................................................i

TABLE OF CONTENTS......................................................................vi

TABLE OF AUTHORITIES ........................................................... viii

FEDERAL RULE OF APPELLATE PROCEDURE 35(b)(1)(A) STATEMENT REGARDING REASONS FOR GRANTING REHEARING.......................................................................................1

ARGUMENT ...........................................................................................4

    I. Introduction ..................................................................................4

    II. This Court should either reverse the panel's division that the "Off-Street Parking" law affirmatively authorizes the sale of the City's on-street parking meter system, or certify this question, at the very least not free from doubt, to the Illinois Supreme Court. ........................................................................5

    III. For purpose of rehearing, this Court has the option, *sua sponte*, to certify the question of the interpretation of Division 71 to the Illinois Supreme Court, even if plaintiffs are time barred from filing a motion to do so............................................8

    IV. The panel's decision is also clearly erroneous as it did not follow U.S. Supreme Court precedent that would require "active supervision" by the State of Illinois, and not the City of Chicago.....................................................................................10

    V. The panel's decision is wrong because the City of Chicago in fact is not actively supervising CPM and lacks the financial capacity to do so...........................................................11

    VI. The *Parker* immunity defense involves facts that cannot and should not be determined by the panel at the pleading stage. .....................................................................................12

CONCLUSION............................................................................................13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE LIMITATIONS ............................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum Inc.,*
    445 U.S. 97 (1980) ........................................................................ 1, 2, 9

*Chamber of Commerce of the United States v. City of Seattle,*
    890 F.3d 769 (9th Cir. 2018) ................................................................ 10

*Chicago Teachers Union, Local No. 1 v. Board of Ed.,*
    662 F.3d 651 (7th Cir. 2011) .................................................................. 8

*FTC v. Phoebe Putney Health Systems*
    568 U.S. 216 (2012) ............................................................................. 10

*Hallie v. City of Eau Claire*
    471 U.S. 34 (1984) ................................................................... 2, 3, 10, 11

*N. Carolina State Bd. of Dental Examiners v. F.T.C.,*
    574 U.S. 494 (2015) ............................................................................. 10

*Parker v. Brown,*
    317 U.S. 341 (1943). ................................................................ 1, 2, 5, 9, 12

*Poole v. Kankakee,*
    94 N.E.2d 416 (1950) ............................................................................ 9

*State Farm Mut Auto Ins. C v. Pate,*
    275 F.3d 666 (7th Cir. 2001) .................................................................. 9

*U.S. v. Howard,*
    968 F.3d 717 (7th Cir. 2020) .................................................................. 6

*U.S. v. Williams,*
    553 U.S. 285 (2008) ............................................................................... 7

*Yates v. United States,*
    574 U.S. 528 (2015) ............................................................................... 7

**Statutes**

15 U.S.C. § 1 ....................................................................................... 12

15 U.S.C. § 2 ..................................................................................... 4, 12

65 ILCS 5/11-71-1 ........................................................................... *passim*

**Additional Authorities**

Fed. R. App. P. 7th Cir. R. 52 ......................................................... 2, 8

Ralph Martire, Center for Tax and Budget Accountability,
"Mayor-elect Johnson faces fiscal cliff in general operating budget,"
*Chicago Sun-Times*, April 13, 2023 .................................................. 11

**FEDERAL RULE OF APPELLATE PROCEDURE 35(b)(1)(A) STATEMENT REGARDING REASONS FOR GRANTING REHEARING**

Rehearing *en banc* by this Court is necessary for three reasons:

First, this panel's decision is wrong that the Illinois law entitled "Off-Street Parking," 65 ILCS 5/11-71-1 ("Division 71") authorizes the City to transfer control of its on-street parking meter system, over 37,000 meters, to a private entity to operate for 75 years at a guaranteed rate of return. No state law, least of all a law referring specifically only to off-street parking, authorizes the City of Chicago's 75-year transfer of its parking system to a private entity like Chicago Parking Meters ("CPM"). For that reason alone, CPM as a private entity does not meet the first condition for state-government immunity under the Sherman Act, known as "*Parker* immunity." See *Parker v. Brown*, 317 U.S. 341 (1943) (hereafter "*Parker* immunity"). As set out in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97 (1980), a private party has *Parker* immunity only if it meets two conditions: (1) there must be a "clear articulation" of a State policy in favor of the anticompetitive conduct, and (2) the private enterprise must be "actively supervised by the *State itself*" (emphasis added, internal quotation omitted). *Midcal, supra*, at 105-06.

The panel implicitly admits that there is no such "clear articulation" in any one place authorizing the turnover of the on-street parking system to CPM, instead arguing, "Several Illinois laws, taken together, provide the authority for the state's

1

municipalities to regulate parking." This evades the question of whether an arguable inference of "authority" from cobbling together different statutes is anywhere close to the "clear articulation" required by *Midcal*. To find "clear articulation" for this agreement about on-street parking, the panel is forced to rely principally upon the Illinois statute headed "Off-Street Parking." That law, Division 71, clearly describes and applies to *off-street parking facilities* and makes *no* reference to *on-street* parking on the public streets and ways. Far from "clear articulation," Division 71 is not even a plausible grant of legal authority to sell, transfer, or turnover to CPM the City's entire system of *on-street* parking for monopoly profit for 75 years.

It is just plain wrong that a statute titled "Off-Street Parking" authorizes the turnover of the on-street parking system. At the very least, the question whether Division 71 applies to on-street parking at all—a question of enormous public importance to the people of Chicago—would benefit from the input of the Illinois Supreme Court. At the end of the briefing in this case, Plaintiffs acknowledge that they did not move pursuant to Circuit Rule 52 to certify the question to the Illinois Supreme Court and are now time barred from doing so. However, this Court still has express power under Circuit Rule 52 to do so, *sua sponte*, and that is an option to rehearing *en banc* as the decision of the Illinois Supreme Court in Plaintiffs' favor

is outcome determinative—that there is no exemption under *Parker*, and the CPM Agreement is an illegal private monopoly.

Second, the panel erred by failing to apply the second condition required by *Midcal*—that the State itself and not a municipality must actively supervise the private entity. See *Midcal, supra*, at 105-06. Under *Hallie v. City of Eau Claire*, 471 U.S. 34 (1984) the Court held that no State supervision is required *only* if the municipality itself, alone, is performing the function, and no private party is involved. However, if a private party like CPM has a role, then the State, not just the municipality, must supervise that part. As stated in *Hallie* at 46 n. 10:

> "Where state or municipal regulation by a private party
> is involved, active state supervision must be shown, even
> where a clearly articulated policy exists."

Because CPM is involved—because the City of Chicago is no longer operating the meter system by itself—the panel was clearly wrong in failing to require active supervision by the State of Illinois.

 Third, the panel erred by finding that even if the *Hallie* exception were applicable (and it is not), the City really is *in fact* "actively supervising" CPM. This is an appeal from a dismissal under Rule 12(b)(6), and there has been no evidentiary record for the Court to make such a factual finding, *sua sponte*.

Accordingly, Plaintiffs seek a rehearing for the reasons above, unless this Court should decide, *sua sponte*, to certify a controlling question of state law that has yet

to be decided by the Illinois Supreme Court—namely, whether Division 71, "Off-Street Parking," grants legal authority to the City to lease and turn over management of its on-street parking system, some 37,000 meters, and to collect all the revenue from such meters at fixed rates under a contract for 75 years.

## ARGUMENT

### I.    Introduction

In 2008, the City of Chicago and CPM, a privately owned company, entered into the Metered Parking System Concession Agreement ("the Agreement"), which was modified in 2013. Under the Agreement, the City of Chicago has conferred a private monopoly on CPM for 75 years to collect all the meter rent, at guaranteed rates, from the city's entire commercial parking meter system, over 37,000 meters. The agreement may not be terminated, re-bid, modified, or otherwise changed, to allow a reduction in the meters unless the City makes full compensation to CPM for the lost profitability over the remaining period of the contract. While CPM originally paid $1.1 billion, CPM had by 2021 recovered the entire original investment. CPM had also earned an additional sum of more than $500 million with an additional 60 years of profit still to come.

Plaintiffs and other Chicago drivers now pay the highest meter rates in the country outside of New York City, and much higher than comparable cities like Houston and Los Angeles. Plaintiffs brought this challenge to the Agreement, both

as an unlawful monopoly under Section 2 of the Sherman Act, and as an unreasonable restraint of trade under Section 1 as the Agreement may not be rebid to competitors or taken back by the City for 75 years. Plaintiffs do not seek damages or any relief except a declaration that a reasonable term for such Agreement has now been reached and the Agreement should be subject to termination by the City.

The District Court held that plaintiffs had state claims for relief both under Section 2 (unlawful monopoly) and Section 1 (unreasonable restraint of trade). However, the District Court erroneously held that the so-called *Parker* exemption applied to the Agreement because state law had authorized the monopoly and that no supervision by the State was required.

Plaintiffs turn to the reasons why the panel decision affirming *Parker* immunity for CPM is clearly erroneous.

## II.    This Court should either reverse the panel's division that the "Off-Street Parking" law affirmatively authorizes the sale of the City's on-street parking meter system, or certify this question, at the very least not free from doubt, to the Illinois Supreme Court.

The Illinois off-street parking law on which the panel relied as "clearly articulating" sale of 37,000 *on-street* meters states in part as follows:

> "OFF-STREET PARKING
> "Section 11-71-1
> "Any municipality is hereby authorized to:
> (a) Acquire by purchase or otherwise, own, construct, equip, manage, control, erect, improve, extend, maintain

5

and operate motor vehicle parking lot or lots, garage or garages constructed on, above and/or below ground level, public off-street parking facilities for motor vehicles, parking meters, and any other revenue producing facilities, hereafter referred to as parking facilities."

The title of this provision is "Off-Street Parking," and the provision as a whole is referred to as Division 71. While the title of Division 71—Off-Street Parking—is not a formal part of the statutory language, it is an important guide to its purpose, scope, and policy, and respectfully, the Court should not have so easily dismissed it. The panel states that the term "parking meters" as used near the end of a series of terms referring to off-street lots, off-street garages, and "off-street parking facilities" implies the inclusion of *on-street meters,* on the public streets and ways. Under any traditional canon of statutory construction, it is unjustified to use a general term like "parking meters" after a series of specific terms to expand enormously the scope of the statutory language. It is perfectly consistent for the "parking meters" to be the parking meters in *off-street parking facilities,* the term immediately preceding. For instance, in Lincoln Square, the City of Chicago has two large off-street parking facilities that consist exclusively of "parking meters," the term used in Division 71. Other off-street facilities in Logan Square and elsewhere consist of *off-street* parking meters.

Under the principle of noscitur a sociis, a term like "parking meters" should take its meaning from the terms surrounding it. For example, in *U.S. v. Howard,*

6

968 F.3d 717, 721 (7th Cir. 2020), this Court stated: "…under the venerable doctrine of *noscitur a sociis,* a word 'is known by the company it keeps,' and we must 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words.'" *Yates v. United States*, 574 U.S. 528, 543 (2015); see also *U.S. v. Williams*, 553 U.S. 285, 294 (2008) (referring to "the commonsense canon of *noscitur a sociis*"). Nor does it make any sense that the General Assembly would even pass a statute to authorize *on-street* parking, which has existed more or less immemorially since the founding of Chicago.

Significantly, the District Court agreed with Plaintiffs—and implicitly disagreed with the panel—that subsection (a) of Division 71(a) had no application to *on-street* parking meters. Rather to find authority in subsection (a), the District Court relied on the City's incidental authority to enter contracts of any kind in subjection (c) of Division 71. Such authority to enter contracts in that subsection, however, extends expressly to the parking facilities identified in subsection (a), which the District Court had already held did not apply here.

Even if Division 71, "Off-Street Parking," applied to *on-street* parking (which it does not), it still does not authorize the City of Chicago to give up managing and operating such parking to a private party. Division 71(a) authorizes a municipality only to "*control… maintain and operate*" the parking facilities described in subparagraph (a), not to give up such control and operation.

For both reasons, Division 71 which refers specifically only to "off-street" and not "on-street" parking, does not authorize the City to give up control of its entire on-street parking meter system on the public streets and ways.

### III. For purpose of rehearing, this Court has the option, *sua sponte*, to certify the question of the interpretation of Division 71 to the Illinois Supreme Court, even if plaintiffs are time barred from filing a motion to do so.

Given the huge importance of this question of state law to the people of Chicago, it would certainly be appropriate to have the opinion of the Illinois Supreme Court on this important question of state law. This Circuit Rule 52 provides a means for the panel or this Circuit *en banc* to certify a question of law like the application of Division 71 to the Illinois Supreme Court. The Rule states in part:

> "(a) When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court… and may stay the case in this court to await the state court's decision of the question certified."

Under Circuit Rule 52(a), Plaintiffs acknowledge they are time-barred from filing such a motion, as any motion must be included or filed with the appellate brief. However, this Court's power to certify questions *sua sponte* arises later and lasts longer, after such briefs are filed, or even after the panel's decision. For

example, this Court did so after the panel's decision in *Chicago Teachers Union, Local No. 1 v. Board of Ed.,* 662 F.3d 651, 659 (7th Cir. 2011) (*per curiam*).

It should be noted that the Illinois Supreme Court has interpreted Division 71 on several occasions but only as to cases involving authorization of off-street parking facilities. See *Poole v. Kankakee*, 94 N.E.2d 416 (1950). The Illinois Supreme Court has never decided whether Division 71 has a much broader reach to *on-street* parking, or to turn over control of public curb space to a private company. As this Circuit has stated, certification is always desirable:

> "…when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity illuminate a clear path of the issue." *State Farm Mut Auto Ins. C v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).

This is certainly a matter of "vital public concern," on which the Illinois Supreme Court, to say the least, has not had an opportunity to "illuminate a clear path." It would serve the cause of justice and comity for the Illinois Supreme Court to have that opportunity. The question to be certified may be stated as follows:

> "Does Division 71, 65 ILCS 5/11-71-1, titled Off-Street Parking, authorize the City of Chicago to lease or transfer the control and operation of its on-street parking meter system to a private entity for a term of 75 years, and with the exclusive right of that private entity to collect all revenue from that meter system, at rates guaranteed by the City?"

**IV.    The panel's decision is also clearly erroneous as it did not follow U.S. Supreme Court precedent that would require active supervision by the State of Illinois, and not the City of Chicago.**

For the *Parker* exemption to apply to a private entity, the second condition set out in *Midcal* is active supervision by the State. *Midcal, supra*, 445 U.S. at 105. In this case, the *State*—that is, the State of Illinois—does not supervise CPM at all. Yet as often made clear by the U.S. Supreme Court, it is the State, not the City, which must actively supervise a local monopoly when a private party is involved. In *Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1984), the Court held that it would excuse active supervision *by the State* only when the municipality itself exclusively performed the monopoly *and no private party was involved*. If, however, a private party was involved, the State had to supervise, or be part of the supervision, and it could not be left to the local government. As the Court stated in *Hallie*:

> "Where state *or municipal* regulation by a private party is involved, however, active *state* supervision must be shown, even where a clearly articulated state policy exists" (emphasis supplied). *Hallie*, 471 U.S. at 46, n. 10

As a result, there is no *Hallie* exception here to State supervision. As the Supreme Court has stated, when a city is exclusively running a waste treatment plant, in *Hallie*, there is less risk of pursuit of private interests, and no need for State supervision. See *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 508 (2015); *FTC v. Phoebe Putney Health Systems*, 568 U.S. 216, 228 (2012). But as all these cases say, there is no exception when a private party is involved. This

has been the law followed in other Circuits. See *Chamber of Commerce of the United States v. City of Seattle*, 890 F.3d 769 (9th Cir. 2018). The panel's decision excusing State supervision is in conflict with all of these cases.

**V.    The panel's decision is wrong because the City of Chicago in fact is not actively supervising CPM and lacks the financial capacity to do so.**

Even if there were a *Hallie* exception (and there is not), there has been no discovery, no motion for summary judgment, no findings of fact in the trial court to determine that the City is in fact actively supervising CPM. The panel is not capable of making that determination at the pleading stage. Even if the City has the legal capacity to make changes in the Agreement, the City does not have the financial capacity to do so, or at least to make significant changes. For example, under the Agreement, should the City take any set of actions that reduce the value of the Agreement by a third, CPM can demand that the City pay in 30 days the *full value* of the entire remaining term of the Agreement—a sum that at present could be up to $7 billion or more. The City simply does not have the money to do more than minimal regulation. For the current fiscal year 2023, the City's corporate fund—its general operating budget—is roughly $5.4 billion, and that is based on several one-time payments the City will not have next year. See Ralph Martire, Center for Tax and Budget Accountability, "Mayor Elect Johnson faces fiscal cliff in general operating budget," *Chicago Sun-Times*, April 13, 2023. The City has also run up $33 billion in unfunded pension debt. *Id*. The panel has heard or taken no

evidence as to whether the City, which is effectively broke, at best has the financial ability to regulate or supervise CPM as the City might wish. This is an issue that the panel should not attempt to decide at the pleading stage but leave instead for fact finding in the district court below.

## VI.    The two Sherman Act violations involve facts that cannot and should not be determined by the panel at the pleading stage.

The District Court found that, but for the *Parker* exemption, Plaintiffs had stated a claim for relief under both under Section 2 and Section 1 of the Sherman Act. Plaintiffs will show that CPM is operating a monopoly in the most basic possible sense—namely, that sooner or later anyone who has a car in the City of Chicago will end up paying money to CPM. In real life, no active motorist living here can avoid it. Plaintiffs and other drivers have—in fact—no alternative to regular or periodic use of the 37,000 meters that CPM controls. It is the common understanding of the City's car driving citizens that CPM is a monopoly which they must use. And the common understanding is correct. Everyone in the city with a car—at least everyone who takes it out of a garage for city use—will sooner or later have to pay tribute to CPM. In that respect, CPM is not like the privately owned Skyway, which drivers need never use, because both I-94 and state route 41 are always there. Nor is this exclusive monopoly one of reasonable duration, a *reasonable* restraint, with an opportunity for re-bidding at normal intervals. It is in continuing effect, at fixed rates, for 75 years, a restraint far beyond any *reasonable*

term consistent with Section 1. For close to a century, the Agreement locks in a particular transportation grid as well, in a time of climate change and major change to electrification of transport already at hand.

## CONCLUSION

For all the above reasons, Plaintiffs request that this Court grant the petition for rehearing, should the Court not choose to certify the question of state law to the Illinois Supreme Court.

Dated: April 21, 2023                                    Respectfully submitted,


   /s/ Thomas H. Geoghegan
Attorney for Plaintiffs-Appellants

Thomas H. Geoghegan (*counsel of record*)
Michael P. Persoon
Willem W. Bloom
DESPRES, SCHWARTZ & GEOGHEGAN, LTD.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511

Stuart J. Chanen
Ariel Olstein
CHANEN & OLSTEIN
7373 N. Lincoln Avenue, Suite 100
Lincolnwood, IL 60712
(847) 469-4669

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE LIMITATIONS**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d) because the brief contains 3,258 number of words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 13-point Book Antiqua type.


Dated: April 21, 2023                               ___/s/ Thomas H. Geoghegan___
                                                    Attorney for Plaintiffs-Appellants